## LORENZO BELTRAM *v.* THE STATE.

MURDER — EVIDENCE. — See facts held to be sufficient to sustain a conviction for murder in the first degree.

APPEAL from the District Court of Robertson.    Tried be- low before the Hon. S. FORD.

The indictment charged the appellant and one E. Crews with the murder of one Manuel, a Mexican, whose name was otherwise unknown.    The deed was alleged to have been done on June 7, 1880, by shooting the deceased with a gun. Appellant was tried separately, found guilty of murder in

the first degree, and his punishment assessed at confinement in the penitentiary for the term of his natural life.

It appears by the evidence that the appellant and the deceased, who were both Mexicans, were tenants on the farm of Ben Brown, occupying and cultivating different fields. There had been contention between them for months before the homicide, and Brown had told each of them to keep off of the other's premises. The deceased was killed upon his portion of the leased ground.

In the opinion will be found a clear and comprehensive summary of the material circumstances under which the deed was perpetrated.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

HURT, J. The appellant was convicted of murder in the first degree, and his punishment fixed at confinement in the penitentiary for life ; from which he appeals to this court.

There is no assignment of errors ; neither is there a bill of exceptions in this case. The only objection urged by the appellant to the action of the court below was the overruling of the motion for a new trial. The grounds of the motion are these : —

1. Because the court erred in its instructions to the jury in the third, fourth, fifth, and sixth subdivisions of its charge.

2. Because the verdict of the jury is contrary to the law.

3. Because the verdict of the jury is contrary to the evidence.

The errors are not specifically pointed out. It is our duty, however, to examine closely these charges, and if the law applicable to the evidence has not been charged, to reverse the case. By reference to the charge, it will be found correct, keeping in view the evidence. The constituents of murder of the first degree — all of its elements —

were clearly set forth in the charge.   The law of the case was not only given, but properly applied to the facts, or any inference which could have been made from the facts.

In the third charge we find this sentence : "And such sedate and deliberate mind and formed design is shown to exist by the evidence of the external circumstances, such as old grudges and quarrels, lying in wait, antecedent menaces, *propositions*, and the like."   We are unable to understand what was intended by " propositions."  The judge must have used the word *provocations*, and the clerk mistook it for *propositions*.   Be this as it may, after a careful examination of all the parts of the charge, the relation to and the effect the one has upon the other, and as a whole, we are clearly of opinion that this word " propositions " did not affect the case.

There was a conflict of evidence upon the main point.   It is true the defendant proved by several witnesses that deceased, on the morning of the day of the killing, threatened to kill the defendant.   These threats were made at breakfast, and the killing occurred about ten o'clock.   It seems that the defendant that morning was at the house of Antonio Mansala, inquiring for his (appellant's) wife, stating that he wanted to find her to get the key of his house, so that he could get his gun ; that he was going to kill Manuel, the deceased.   He asked Mansala for powder, and said that only one barrel of his gun was loaded ; wanted to load the other ; was seen a while after passing the house of Mansala, going in the direction of where deceased was killed.   Jennie Griffin corroborated Mansala as to the powder and the threats, and in fact in every material part.   When defendant reached the field where deceased was, we find that deceased had borrowed a plough from the witness Ben Williams, had hitched his horse to the plough, and had gotten about sixty yards from witness, going towards his work.   Defendant passed the witness Williams, going in the direction of deceased, overtook him, and said something not understood by

Williams, they talking in the Mexican language. The witness Williams states at this point: " Directly I saw the defendant present his gun and point at the deceased. Deceased kept dodging around his horse. Defendant said: ' Make a move — make a pass — fire — shoot ! ' Deceased .had gone from his plough and had hold of his horse's bridle, or line, and dodged around his horse four or five times, defendant trying to get at him. Deceased was near the head of his horse, dodging, and the defendant shot him. Deceased fell and hallooed, ' O Lord ! ' Defendant left. Deceased died that evening; had no arms, and when he was shot, had one hand on his bridle and the other hanging by his side."

In these facts we find " preparation," cool reflection, and the utmost deliberation. We find the design formed and coolly and deliberately executed. This is murder of the highest degree. There is no pretence that deceased was making any effort to put into execution his threats, if he had made any. The facts in this case show that defendant coolly and deliberately made himself the avenger of his own wrongs, if he had received any at the hands of the deceased.

Being unable to find any error in the charge of the court, and the evidence supporting fully and completely the verdict of the jury, we are of opinion that the court did not err in overruling the motion for a new trial.

The judgment is therefore affirmed.

*Affirmed.*